IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALLACE SCHOOL DISTRICT NO. 393, | ) |
| | ) |
| Plaintiff, | ) Case No. CV04-128-N-EJL |
| | ) |
| vs. | ) MEMORANDUM ORDER |
| | ) |
| COREGIS INSURANCE ORGANIZATIONS, et al, | ) |
| | ) |
| Defendants. | ) |

Plaintiff, Wallace School District No. 393 ("School District"), brings this lawsuit based on a state law breach of contract and bad faith claim, alleging that Defendants Coregis Insurance Organizations, et al. ("Coregis") failed to honor "their express [insurance] contract obligations . . . when they refused to fully cover the loss associated with the collapse of a School District building." (Pl.'s Am. Resp. at 1). Coregis has moved for summary judgment and the School District has opposed the same. The motion is now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.[1]

---

[1] See Partridge v. Reich, 141 F.3d 920, 926 (9th Cir.1998) (holding that "a district court can decide [summary judgment] without oral argument if the parties . . . . ha[ve] had an adequate opportunity to provide the trial court with evidence and a memorandum of law").

MEMORANDUM ORDER - Page 1
05ORDERS\Wallaceschool_sj.WPD

**Background**

The School District is insured under a policy issued by Coregis. Among other things, the insurance policy provides coverage for damage to property owned by the School District. Relevant here, the policy declares that the valuation of any covered damage to a building will be at "replacement cost at the time and place of loss." (Aff. of Grailing Brown, Ex. 1, Idaho School Package Policy No. FE-913-8284, ¶ H.12.a, at 5-6). Replacement cost is defined as "mean[ing] that repair or replacement will be made with new materials or property of like kind and quality." (Id.). Furthermore, the policy limits Coregis' obligation to pay for a loss on a replacement cost basis to the lesser of (a) the applicable amount of insurance, or (b) "the amount which would be required to rebuild, repair or replace the building if were on the same site, for the same occupancy and of like height, floor area and style," or (c) the amount actually spent to make the necessary repair or replacement. (Id.). Finally, the insured may elect to "make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis." (Id.).

In making the election to claim the actual cash value, the insured "may still make a claim for the additional coverage if [it] notifies [Coregis] of [its] intent to do so within 180 days after the loss or damage" (hereinafter "additional coverage provision"). (Id.). If the insured gives notice within the 180 days of its "intent to repair or replace the damaged property" it must make the repair or replacement within 3 years. If the insured fails to adhere to the 3 year requirement then the insured will forfeit any right to additional coverage and the "loss shall be valued at the actual cash value on the date of loss." (Id.).

The School District also purchased an endorsement for "Increased Cost of Construction Extension" which modified the above provisions as follows: "for any building damaged or destroyed, the maximum amount of insurance applicable shall be the amount actually required to rebuild, repair or construct the insured 'building' including the increased cost of repair or rebuild the building according to the minimum requirements of any ordinance, law or code . . . ." (Aff. of Grailing Brown, Ex. 1, Idaho School Package Policy No. FE-913-8284, Endorsement for Increased Cost of Construction Extension). Similar to the "additional coverage" provision recited above, for the endorsement to be effective the damaged or destroyed building must be "actually rebuilt or repaired on the same location and for the same occupancy . . . within three years of the occurrence of direct physical loss." (Id.).

On March 30, 2002, part of the roof collapsed on a building owned by the School District, the Wallace Elementary School. At the time, the building was being used to store school equipment and supplies. The parties dispute the intent of the School District regarding any future use of the building. (Pl.'s Am. Response at p. 3-5 (comparing Defs.' Statement of Undisputed Facts and the School District's contrary evidence that places in issue certain material facts regarding the School District's intention regarding the building)).[2] But as the claim process progressed, Coregis took the position that the building would not be used again for instructional purposes. Accordingly, Coregis hired a contractor to estimate the cost of the

---

[2] Specifically, Coregis cites deposition testimony that indicates the School District had no immediate plans to use the building for instructional purposes, (Defs.' Statement of Undisputed Facts ¶ 8), while the School District declares that the "Board of Trustees intended to preserve and maintain the school and keep it available for future use if that need should arise" and that the "School District had not formulated any plans to never again use the building for instructional purposes and housing students," (Aff. Michael K. Branstetter ¶ 3).

building's repair without including any construction expenditures associated with the students' use of the building.

The School District, on the other hand, consulted with an architect that prepared a repair estimate anticipating future use of the building for instructional purposes. Among other things, this meant that unlike the Coregis estimate, the architect's estimate included the cost of code upgrades, safety considerations and handicap access. Consequently, the estimate prepared for Coregis and the estimate obtained by the School District differed by a significant amount, driven primarily by the parties' dispute over the need for "code upgrades" to permit future student use of the building. Coregis acknowledges the parties' material factual dispute over the "code upgrades" but maintains that "the issue of whether 'code upgrades' are necessary is irrelevant to this Motion [for Summary Judgment] and does not need to be addressed." (Coregis' Reply at 6, fn.2).

Because of this dispute, when Coregis tendered payment on the insurance claim, the School District made its acceptance contingent on a reservation of rights to claim "additional coverage," including the amount necessary to repair the building with code upgrades. Instead of repairing the building, however, the School District arranged for its demolition.

Subsequently, the School District initiated this lawsuit, seeking recovery of the additional sums it contends it is entitled to under the insurance contract. Coregis, in turn, filed this Motion for Summary Judgment arguing that under the terms of the insurance contract Coregis "has no [further] liability for the cost of repair or replacement of the damage to the building." (Defs.' Mem in Supp. at 3).

**Standards**

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002).

When analyzing the merits of the pending motion the Court is mindful that the subject matter of this lawsuit is based solely on diversity jurisdiction. This Court, then, must apply the substantive law of Idaho, as interpreted by the Idaho Supreme Court. See Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir.1988). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989), cert. denied, 493 U.S. 1058 (1990). In this regard, the federal court must follow an intermediate state court decision unless other persuasive authority convinces the federal court that the state supreme court would decide otherwise. Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).

**Discussion**

The parties appear to agree that the initial payment made by Coregis to the School District on the insurance claim should be evaluated under the "actual cash value" term of the insurance contract. Then, in line with the structure of the insurance contract, the primary area of disagreement revolves around the School District's entitlement, if any, to "additional coverage" and recovery under the "Increased Cost of Construction Extension." As noted

above, the insurance contract permits the insured to receive a payment for "actual cash value" and still receive "additional coverage" so long as the insured complies with certain conditions.

In its opening brief, Coregis focuses on two conditions that it alleges disqualify the School District from further recovery. First, Coregis alleges that the School District did not notify Coregis within 180 days after the loss of the building of the School District's intent to proceed under the "additional coverage" provision. Second, Coregis alleges that the School District's did not comply with the requirement under the "additional coverage" provision and the "Increased Cost of Construction Extension" that any repair occur within three years of the loss. Furthermore, Coregis notes that it is now impossible for the School District to repair the building because the School District caused it to be demolished.

The School District responds to Coregis' assertion regarding the notice provision by producing a certified letter it sent to Coregis that provides notice to Coregis, within 180 days after the loss, of the School District's intent to proceed under the "additional coverage" provision. (Aff. of Darrel W. Aherin, Ex. H). As to the requirement that the School District repair the building within three years, the School District states that it was unable to fulfill this condition because of Coregis' conduct. Specifically, the School District asserts that because Coregis indicated it would not under any circumstances provide additional coverage for code upgrades, it was forced to demolish the building rather than repair it.

In its reply, Coregis now concedes that it did after all receive timely notice of the School District's intent to repair the building. (Reply at 3 (stating that "the Plaintiff did

provide sufficient notice within 180 days of the loss of its intent to repair")).[3] Coregis continues to insist, however, that summary judgment is appropriate because the School District did not, and cannot, repair the building within three years of the loss. With respect to the School District's contention that Coregis would not under any circumstances provide additional coverage for code upgrades, Coregis variously argues that "[t]here is no reason for the [School District] to think that Coregis would not honor the terms of the policy;" that the School District "is not allowed to recover actual costs to repair based upon speculation that Coregis would breach the insurance contract;" and finally that the School District is not allowed "to disregard express contractual provisions based on the suspicion that the other side would not honor its obligations." (Reply at 3-5).

This characterization, however, ignores the record, and consequently misstates the applicable law. The School District has filed a sworn affidavit, based on personal knowledge, wherein the affiant declares that representatives of Coregis "made it clear to the undersigned that it would pay no more than [its] estimated cost of repair . . . and that Coregis would not agree, under any circumstances, to be responsible for the costs of code upgrades." (Aff. Michael K. Branstetter ¶ 19). As a result, the School District "had no choice but to accept the inadequate sum offered by Coregis, with full reservation of rights, and proceed with demolition of the building." (Aff. Michael K. Branstetter ¶ 20). This is more than

---

[3] "For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions" and binding on that party. American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-27 (9th Cir. 1988).

speculation; it is competent evidence,[4] sufficient to create a genuine issue of material fact as to whether Coregis categorically stated in advance that even if the School District repaired the building it would not honor the terms of the "additional coverage" provision and/or the "Increased Cost of Construction Extension."

This factual dispute is significant because Idaho recognizes the doctrine of anticipatory repudiation. See, e.g., Foley v. Munio, 669 P.2d 198, 200-01 (Idaho 1983) (defining anticipatory repudiation of a contract "as a repudiation by the promisor of his contractual duty before the time fixed in the contract for his performance has arrived" and explaining that when a party to a contract "repudiates or renounces his obligation before the time for performance, the promisee has . . . an option to treat the contract as ended, as far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach, repudiation, or renunciation"). And the concept of anticipatory repudiation is now routinely applied to insurance contracts. See generally Combs v. International Ins. Co., 354 F.3d 568, 598-601 (6th Cir. 2004). Accordingly, the genuine issue of material fact regarding Coregis' refusal to pay for code upgrades bears on whether there was an anticipatory repudiation of the insurance contract that excuses the School District's repair of the building prior to receiving "additional coverage" and recovery under the "Increased Cost of Construction Extension." The Motion for Summary Judgment must therefore be denied.[5]

---

[4] The declaration appears to be "not hearsay." Fed. R. Evid. 801(d). And, in any event, Coregis does not challenged its admissibility.

[5] The parties also express disagreement over certain other predominately legal issue, including if the amount paid by Coregis to the School District is an accurate calculation

## ORDER

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment (docket no. 14) is **DENIED.**

**IT IS FURTHER ORDERED** that the Court refers this matter to United States Magistrate Mikel H. Williams for the purpose of conducting a Settlement Conference to be conducted on or before December 20, 2005. The parties are directed to immediate contact Judge Williams' courtroom deputy, Anne Lawron, at 208-334-9387, to arrange a date and time for said conference.

DATED: **October 28, 2005**

_____
Honorable Edward J. Lodge
U. S. District Judge

---

under a proper interpretation of the contract's terms. Specifically, the School District contends that the term "actual cash value" is ambiguous and that Coregis incorrectly interpreted that term as meaning replacement cost less depreciation and that the depreciation deduction of 35% was inappropriate. Given the Court's ruling on the Motion for Summary Judgment the relevance that these issues may have on the outcome of this case is speculative and will not be addressed at this time.